# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **DANNY L. HILL,** | }
}
**Plaintiff,** } 
} 
v. } Case No.: 5:07-CV-01369-RDP
} 
**MICHAEL J. ASTRUE,** }
**Commissioner of Social Security,** }
}
**Defendant.** } |

## MEMORANDUM OF DECISION

Plaintiff Danny L. Hill brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of Disability Insurance Benefits under Title II of the Social Security Act (the "Act") and his application for Supplemental Security Income ("SSI") benefits under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

**I.   Procedural History**

Plaintiff filed his application for a period of disability and SSI benefits on August 14, 2003, alleging a disability onset date of July 20, 2003. (Tr. 16, 17, 39, 46). Plaintiff's application was denied and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 32). Plaintiff's case was heard by ALJ Randall C. Stout on April 21, 2005. (Tr. 197-224). In his June 21, 2005 decision, ALJ Stout determined that Plaintiff was not eligible for disability or SSI benefits because he failed to meet the disability requirements of the Act and retained the residual functional capacity

to perform light work with restrictions. (Tr. 22). On February 23, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 5-7). The ALJ's decision then became the final decision of the Commissioner, and therefore a proper subject of this court's review.

Plaintiff was born on May 2, 1946. (Tr. 40). He has completed the seventh grade. (Tr. 208). He previously worked as a cashier with stocking responsibilities in a family owned store. (Tr. 17, 204). Plaintiff alleges that he has been unable to engage in substantial gainful activity since July 20, 2003 due to diabetes mellitus, high blood pressure, blurred vision, weakness, neuropathy, dizziness and pain. (Tr. 17, 47).

Since at least 2000, Dr. Michael L. Putnam has treated Plaintiff for diabetes mellitus and high blood pressure. (Tr. 18, 68, 78, 136-54, 184-92). Though the records are hard to read, it can be gleaned that on January 17, 2000 Dr. Putnam diagnosed Plaintiff with Type II diabetes ("Type 2 D") and high blood pressure ("HBP"). (Tr. 153). In September 2001, Plaintiff saw Dr. Putnam for a routine visit. (Tr. 150-51). Plaintiff's random blood sugar reading was reported at 58 and his blood pressure was recorded as 170/102. (Tr. 150). Diagnoses from this date include meralgia paresthetica, Type II diabetes, high blood pressure and COPD (Chronic Obstructive Pulmonary Disease). (*Id.*). In March 2002, Plaintiff's blood pressure was recorded as 162/80 and his random blood sugar was 113. (Tr. 147). Listed medications include Zestril, Avandia, Glucophage, and Diovan. (*Id.*). When Plaintiff returned in October 2002, he had a blood pressure reading of 150/64 and a fasting blood sugar level of 172. (Tr. 144). Plaintiff next saw Dr. Putnam on July 10, 2003. (Tr. 141-43). At this time, Dr. Putnam notes Plaintiff's "poor compliance" with his medications. (Tr. 141). Plaintiff was recorded as being 6'1" and weighing 248 pounds. (*Id.*). His blood pressure readings were 208/90 and 216/92, and his random blood sugar was 180. (*Id.*). On July 22, 2003,

Plaintiff's blood pressure was recorded as 166/76 and Dr. Putnam's notes indicate a diagnosis of obesity and a Mass Body Index of 32. (Tr. 136).

On December 10, 2003, Plaintiff saw Dr. Will R. Crouch for a consultative evaluation. (Tr. 155-57). Plaintiff's chief complaints were dizziness and blurred vision, along with severe vertigo and severe fatigue. (Tr. 155). Plaintiff also complained of numbness, stating that his "fingers and toes feel dead," and he believed his condition was getting progressively worse. (Tr. 155). Plaintiff also complained of problems with his "nerves" since his son died two years earlier, but he was not on any medication for anxiety or depression. (*Id.*). Likely referring to Dr. Putnam, Plaintiff indicated that his physician does not give pain or nerve pills. (*Id.*). Dr. Crouch's examination revealed normal neck and thyroid and clear lungs, though Plaintiff reported smoking about three packs of cigarettes a day. (Tr. 156). Plaintiff had a regular heart rhythm, normal abdomen and normal bowel functions. (*Id.)*. Plaintiff's right eye vision was 20/30 and his left eye vision was 20/50, both uncorrected. (*Id.*). Plaintiff had decreased pinprick sensation to the hands and feet. (*Id.*). Dr. Crouch reported that Plaintiff appeared stiff when he first got up and walked with a slight forward tilt to the pelvis, but he walked without an assistive device and could get on and off the examining table without assistance. (*Id.*). Plaintiff had difficulty with heel and toe walking and could not squat and rise. (*Id.*). Dr. Crouch's diagnoses were Diabetes Mellitus, Type II, with peripheral neuropathy; decreased visual acuity, uncorrected; chronic fatigue; chronic anxiety and depression, untreated; hypertension, poorly compensated; and obesity. (Tr. 157).

On December 11, 2003, clinical psychologist Barry Wood, Ph.D performed a consultative evaluation on Plaintiff. (Tr. 158-61). Dr. Wood tested Plaintiff's mental acuity by asking him various questions relating to topics such as current events, simple arithmetic, and geography. (Tr.

160).  Plaintiff reported that he suffered from recurrent depression secondary to numerous family tragedies, including having two cousins and a brother commit suicide.  (Tr. 159).  Dr. Wood concluded that Plaintiff's IQ was within the Low-Average range.  (Tr. 160).  Dr. Wood also found Plaintiff's appearance, behavior, range of activities, range of interests, and ability to relate to others to be consistent with mild depression.  (Tr. 160-61).  Plaintiff's Global Assessment of Function (GAF) score was 65. Dr. Wood's diagnosis was Major Depressive Disorder, recurrent, mild.  (Tr. 161).

In January 2004, a disability consultant completed a residual functional capacity assessment for Plaintiff. (Tr. 162-69).  The consultant's primary diagnosis was diabetes mellitus and peripheral neuropathy, and the secondary diagnosis was high blood pressure. (Tr. 162).  The consultant opined that Plaintiff could:  occasionally lift 50 pounds; frequently lift 25 pounds; stand and/or walk for a total of six hours a day; and sit for about six hours a day.  (Tr. 163).  The consultant also opined that Plaintiff could climb ramps and stairs frequently but could only occasionally stoop, kneel, crouch or crawl.  (Tr. 164).  The report indicates that the consultant found Plaintiff to be "partially credible" regarding his alleged symptoms.  (Tr. 167).  Plaintiff returned to Dr. Putnam in March 2004, reporting no change in his symptoms.  (Tr. 19, 190).  Plaintiff's blood pressure was recorded as 162/58.  (Tr. 190).  In November 2004, Plaintiff complained of right hip problems, though Dr. Putnam's report indicates "Normal right hip for age."  (Tr. 187). Plaintiff's blood pressure was 166/56.  (Tr. 185).

The record also includes a simple form signed by Dr. Putnam.  (Tr. 192).  The form has two choices, the first stating "Mr. Hill is able to perform work at a sedentary level of work activity," and

the second stating that Mr. Hill is unable to do such work. (*Id.*). Dr. Putnam marked the first option, indicating Mr. Hill able to perform sedentary work. (*Id.*).

**II.     ALJ Decision**

Determination of disability under the Social Security Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden

then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. 22). The ALJ determined that Plaintiff has a severe combination of impairments of diabetes mellitus, hypertension, and depression. (Tr. 22). However, the ALJ found that Plaintiff's impairments, considered alone or in combination, fail to meet or medically equal the criteria of an impairment listed at 20 C.F.R. § 404, Subpart P, Appendix 1 of the Guidelines. (Tr. 19). According to the ALJ, Plaintiff's subjective complaints concerning his impairments and their impact on his ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record and Plaintiff's own statements. (Tr. 20). The ALJ determined that Plaintiff retains the residual functional capacity to perform light work with mild restrictions. (Tr. 22).

The ALJ called a vocational expert to testify who was present throughout the hearing and familiar with Plaintiff's background. (Tr. 16, 197-98, 205-08, 221-23). The vocational expert testified that an individual with Plaintiff's background and limitations could perform his past work as a cashier. (Tr. 221). Based on the vocational expert's testimony, the ALJ found that Plaintiff is capable of performing his past relevant work and that Plaintiff was not under a disability at any time through the date of the decision. (Tr. 21-22).

**III.    Plaintiff's Arguments for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the expiration of the period for Plaintiff to file objections, reversed, or in the alternative, remanded for further consideration by another ALJ. (Doc. # 6, at 8). Plaintiff asserts

that the ALJ's decision is not supported by substantial evidence and that improper legal standards were applied. Plaintiff specifically asserts that the ALJ erred in failing to find Plaintiff disabled under the Grid Rules. (Doc. # 6, at 6).

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.      Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

Plaintiff argues that the ALJ erred in failing to find Plaintiff disabled under the Grid Rules, specifically Grid Rule 202.01 or 202.02. After determining a claimant's residual functional capacity and ability or inability to return to past relevant work, the ALJ may use the Medical Vocational Guidelines (the "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2 at Step Five of the disability evaluation to determine whether other jobs exist in the national economy that a claimant is able to perform. *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). The Grids provide claimants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments. *Id.* at 1240. Importantly, if a claimant is found not disabled at Step Four, the ALJ has no reason to continue to Step Five and thus does not reach consideration of the Grid Rules. *See* 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step"). Therefore, when an ALJ properly finds that a claimant can perform his past relevant work, the Grids are inapplicable and a claimant cannot successfully argue that the ALJ erred by not using the Grids to reach a finding of disability. *See Smitherman v. Massanari*, 149 F.Supp.2d 1303, 1310 (M.D. Ala. 2001).

In this case, the ALJ properly found Plaintiff was not disabled at Step Four when he determined that Plaintiff retained the residual functional capacity to perform his past relevant work. (Tr. 21). In reaching this conclusion, the ALJ first determined at Step Three that Plaintiff had no

impairment that met the criteria of a listed impairment at 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 19). The ALJ found that Plaintiff's diabetes mellitus did not meet Listing 9.08 because while he may have neuropathy, there was no evidence of any neuropathy that was shown by significant and persistent disorganization of motor function in two extremities that resulted in sustained disturbance of movement, or gait and station, as required by the listing's criteria for neuropathy. (Tr. 19). The ALJ also concluded that Plaintiff's depression, as evaluated under Listing 12.04, resulted in only mild restrictions of daily life and functioning and did not qualify as a listed impairment. (*Id.*).

After determining that Plaintiff had no impairment or combination of impairments that were severe enough to meet a listed impairment, the ALJ evaluated the severity of Plaintiff's symptoms in order to determine his residual functional capacity and whether he could return to his past relevant work. (Tr. 21). A claimant bears the burden of demonstrating he can no longer perform his past relevant work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). In determining Plaintiff's residual functional capacity, the ALJ considered "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 19).

The ALJ properly laid out the Eleventh Circuit pain standard at the beginning of his evaluation of Plaintiff's subjective symptoms. The standard for subjective complaints of pain or other symptoms requires the following:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.

9

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also* 20 C.F.R. § 416.929.[1]  Although such evidence is itself sufficient for a finding of disability, the ALJ may elect not to credit a claimant's subjective complaints.  *See Holt*, 921 F.2d at 1223.  If the ALJ discredits the subjective description of a claimant's condition, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  Such a finding does not require the use of thaumaturgic phrases; all that is required is a clearly supported credibility determination.  *See id.*  However, the ALJ must explicitly discredit the testimony and must articulate sufficient reasons for doing so.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *see also* Social Security Ruling 96-7p ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight . . . .").

After considering all of the evidence in this case, the ALJ concluded that Plaintiff met the first part of the pain standard, but neither prong of the second part was met.  (Tr. 20).  The ALJ clearly articulated his reasons for concluding that the objective medical evidence as a whole does not support the alleged severity of Plaintiff's symptoms.  He found that Plaintiff did have some pain

---

[1] The Regulations provide that, when the medical evidence shows a medically determinable impairments that could reasonably be expected to produce a claimant's symptoms, evidence other than objective medical evidence will also be considered in evaluating a claimant's subjective symptoms.  Relevant factors to be considered include:  (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment other than medication; and (6) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3).

and limitations due to diabetes mellitus and hypertension, but not to the extent alleged, as there was no objective clinical evidence of any condition that could reasonably be expected to produce the symptoms alleged by Plaintiff. (*Id.*). The ALJ found that Dr. Putnam's "essentially routine and conservative in nature" treatment for Plaintiff's diabetes detracted from Plaintiff's claims of vision problems, weakness, neuropathy, and chronic fatigue. (*Id.*). *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (holding that an ALJ can properly consider conservative treatment as substantial evidence to contradict a claimant's subjective complaints); SSR 96-7p, 61 Fed. Reg. 34487 (indicating that treatment history is an appropriate factor for the ALJ to consider in assessing credibility). The ALJ also properly inferred from Plaintiff's non-compliance with taking blood pressure medication that his symptoms were not as limiting as alleged.[2] (Tr. 20). He noted that Dr. Crouch's vision test in December 2003 did not reveal a significant visual impairment or the use of corrective lenses. (*Id.*). Plaintiff even testified that while he had dizziness and weakness problems due to his diabetes, he believed his medication controlled the symptoms fairly well. (Tr. 217). The ALJ also pointed out that Plaintiff never sought treatment from a specialist for his peripheral neuropathy. (Tr. 20).

With regard to Plaintiff's depression, the ALJ found that the evidence supported the conclusion that Plaintiff's depression was only mildly severe rather than disabling. (Tr. 20). The ALJ pointed out that while Plaintiff reported having problems with his "nerves" to Dr. Crouch, (Tr. 155), he was not taking any prescribed medications for his condition. (Tr. 20). Dr. Wood

---

[2]Social Security Ruling 96-7p, 61 Fed. Reg. 34487 allows the ALJ to consider non-compliance in assessing credibility: "[t]he individual's statements may be less credible if the . . . medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."

11

characterized Plaintiff's symptoms as consistent with mild depression. (Tr. 160-61). The ALJ emphasized that despite Plaintiff's claims of progressively worsening depression, he never sought or received treatment from a mental health professional. (Tr. 20). The ALJ also found that Plaintiff's ability to drive and to care for his own personal needs also discredited his allegations of a disability due to depression, pain, or other limitations. (*Id.*). Accordingly, the ALJ properly rejected Plaintiff's subjective complaints under the pain standard.

After considering all of the evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to perform light exertional work with mild restrictions. (Tr. 22). Plaintiff argues that the ALJ's finding is in error because it contradicts an assessment from Dr. Putnam, Plaintiff's treating physician. Plaintiff insists that the ALJ indicated at the hearing that if Dr. Putnam submitted an evaluation which limited Plaintiff to sedentary work, the ALJ would find Plaintiff disabled under the Grid Rules. (Doc. # 6, at 7). The opinion of a treating physician is accorded more weight than that of a non-examining, non-treating source, unless good cause can be shown for not doing so. *See Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (other citations omitted); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ can ignore the treating physician's report or give it less weight if the evidence supports a contrary conclusion or when it is contrary to other statements or reports of that physician. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

The court agrees with Defendant that good cause exists here for rejecting the opinion of Dr. Putnam regarding Plaintiff's exertional limitations. Plaintiff provided Dr. Putnam with a form whose only two alternatives were that Plaintiff was either able or unable to perform sedentary work. (Tr. 192). The court agrees with the ALJ that such a form was "obviously designed to promote a

favorable outcome no matter what the choice," and the ALJ properly gave the form little evidentiary weight. (Tr. 21). By indicating that Plaintiff was able to perform sedentary work on this form, Dr. Putnam did not, as Plaintiff suggests, *limit* Plaintiff to sedentary work. Nothing in that assessment or anywhere else in the record indicates that Plaintiff is incapable of performing light work. Plaintiff failed to provide the ALJ with medical reports to show how Plaintiff's peripheral neuropathy affects his ability to stand or walk, as the ALJ specifically requested at the hearing. (Tr. 222-23). Moreover, as discussed above, the ALJ reached his conclusion regarding Plaintiff's residual functional capacity after considering all of the evidence, including numerous medical reports from Dr. Putnam himself. The court finds that it was proper for the ALJ to reject Dr. Putnam's evaluation because it was not supported by detailed, clinical, and diagnostic evidence. *See* 20 C.F.R. §§ 404.1527 and 416.927.

The ALJ then considered the exertional requirements of Plaintiff's past work in relation to his residual functional capacity. Though not required to do so at this step, the ALJ did not err by obtaining vocational expert testimony regarding Plaintiff's past work. *See Hennes v. Comm'r of Soc. Sec. Admin.*, 130 Fed. Appx. 343, 346 (11th Cir. 2005). The vocational expert testified at the hearing that Plaintiff's past relevant work as a cashier with stocking responsibilities in a family owned business was light in exertional requirements and unskilled.[3] (Tr. 207). The ALJ posed a hypothetical question to the vocational expert that inquired about the ability to perform a full range of light work with mild restriction in activities of daily living, social functioning, and in concentration, persistence or pace. (Tr. 221). The vocational expert testified that an individual with

---

[3]Although stocking is generally considered to be work at the medium exertional level, Plaintiff's past relevant work was primarily that of a cashier, which is considered to be at the light exertional level. (Tr. 207).

the specified limitations would be able to perform work as a cashier in a family owned business. (*Id.*).

Plaintiff asserts that the vocational expert's testimony was applicable only to a family owned business and cannot apply here because the particular business in question no longer exists. (Doc. # 6, at 7). The court disagrees. Plaintiff asked the vocational expert whether she believed that family owned businesses allowed employees the ability to pace themselves, to which the vocational expert responded affirmatively, indicating that there "can be" accommodations made for employees in such jobs. (Tr. 221-22). The vocational expert testified to the exertional requirements for a cashier generally, as listed in the Dictionary of Occupational Titles, not for a cashier working in a family owned store. (Tr. 207). Further, the fact that Plaintiff's specific former employment no longer exists is irrelevant. As Defendant correctly points out, an SSI claimant may be found not disabled at Step Four of the disability evaluation if he remains physically and mentally able to do his previous work, without inquiry into whether the previous work exists in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25-26 (2003). Such an inquiry is "explicitly reserved" for Step Five. *Id.* at 25. Moreover, the Eleventh Circuit has held that the claimant must show the inability to do the previous *type* of work, not merely the specific job he or she held. *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986). Thus, the ALJ was not, as Plaintiff asserts, charging Plaintiff with finding another family member to employ him as a cashier. The court finds that Plaintiff failed to satisfy his burden of showing he was unable to perform his previous type of work.

**VII.  Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The

Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this     29th     day of August, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE